IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| MARK A. BIELSTEIN, RACHELLE R. BIELSTEIN, <br><br> Plaintiffs, <br><br> vs. <br><br> SIGNATURE SOLAR LIMITED LIABILITY COMPANY, JAMES SHOWALTER, JOHN SHOWALTER, <br><br> Defendants, | 2:22-CV-01786-MJH |

OPINION AND ORDER

Plaintiffs, Mark A. Bielstein and Rachelle R. Bielstein, bring the within action against Defendants, Signature Solar Limited Liability Company, James Showalter, and John Showalter, for Negligence (Count I), Strict Products Liability (Count II), Breach of Contract (Count III), and Breach of Warranties (Count IV) for property damage allegedly caused by a defective do-it-yourself off-grid solar kit.  (ECF No. 7).  All Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and Defendant, Signature Solar, also moves for dismissal pursuant to Fed. Civ. R. P. 12(b)(6) for failure to state a claim. (ECF No. 13).  With regard to the personal jurisdiction motion, the parties conducted limited jurisdictional discovery.  These matters are now ripe for consideration.

Upon consideration of the Amended Complaint (ECF No. 7), Defendants' Motion to Dismiss (ECF No. 13), the respective responses, briefs, and supplements (ECF Nos. 14, 16, 17, 18, 30, and 31), and for the following reasons, Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), will be granted.  And, because this Court lacks personal jurisdiction over Defendants,

Signature Solar's Motion to Dismiss, pursuant to Fed. Civ. P. 12(b)(6), will be rendered moot.

I. Background

On or about July 16, 2020, the Bielsteins purchased a vacation home in Abaco, Bahamas. (ECF No. 7 at ¶8). Following said purchase, the Bielsteins planned to renovate the Vacation Home, which included installing an off-grid solar battery system. *Id*. at ¶ 10. The Bielsteins allege they became aware of the do-it-yourself ("DIY"), off-grid solar kits through Defendants' Facebook page. *Id*. at ¶ 11. The Bielsteins aver that, from their residence in Pennsylvania, they purchased a DIY Solar Kit from Defendants. *Id*. at ¶ 11. On or about June 15, 2020, Defendants allegedly invoiced the Bielsteins $16,113.85 for a DIY Solar Kit. *Id*. at ¶ 13. On or about June 16, 2020, the Bielsteins paid said invoice by wire transfer from their bank in Somerset, Pennsylvania. *Id*. at ¶ 14. Shortly thereafter, Defendants allegedly shipped the purchased DIY Solar Kit to the Bielsteins at their place of business in Dunbar, Pennsylvania. *Id*. at ¶ 15. The Bielsteins then delivered the purchased DIY Solar Kit to their Vacation Home after closing on the Vacation Home on or about July 16, 2020. *Id*. at ¶ 16.

On or about October 15, 2021, the Bielsteins allege the DIY Solar Kit malfunctioned, resulting in a catastrophic fire that destroyed the Vacation Home. *Id*. at ¶ 18. The Amended Complaint alleges claims for negligence, strict products liability, breach of contract, and breach of warranties against Signature Solar Limited Liability Company, James Showalter, and John Showalter. Defendants filed the within Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim against Signature Solar. The parties subsequently conducted jurisdictional discovery to address Defendants' motions.

    II.       12(b)(2) Motion

        A. Relevant Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge a Court's exercise of personal jurisdiction. "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102* (3d Cir. 2009) (citing G*en. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). To meet its burden, Plaintiff must establish "[a] nexus between the defendant, the forum and the litigation." *Deutz AG*, 270 F.3d at 150. Plaintiff must demonstrate, by a preponderance of the evidence, that personal jurisdiction exists. *Heinrich v. Serv. Corp. Int'l*, 2009 WL 2177229 at *1 (W.D. pa. July 22, 2009). "[I]n reviewing a motion to dismiss under Rule 12(b)(2) [the court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)). Plaintiff need only to establish a prima facie case for personal jurisdiction over the defendant to overcome a 12(b)(2) motion. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). A resolution of factual issues may be required to establish personal jurisdiction under a 12(b)(2) motion and thus a party may introduce extrinsic evidence beyond the pleadings to do so. *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d at 67 n. 9).

B. Discussion

The Supreme Court recognizes two types of jurisdiction: (i) general (or "all-purpose") and (ii) specific (or "case-linked"). *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773, 1779– 80 (2017).

1. General Jurisdiction

With regard to general jurisdiction, the United States Supreme Court has held:

> court may exercise general jurisdiction only when a defendant is "essentially at home" in the State. General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant. Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select "set of affiliations with a forum" will expose a defendant to such sweeping jurisdiction. In what we have called the "paradigm" case, an individual is subject to general jurisdiction in her place of domicile. And the "equivalent" forums for a corporation are its place of incorporation and principal place of business.

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (internal citations omitted).

Here, the parties do not contend that any of the Defendants are "at home" in Pennsylvania. Indeed, the Amended Complaint alleges that both James and John Showalter reside in Texas. (ECF No. 7 at ¶¶ 3-4). With regard to Signature Solar, LLC, the Amended Complaint avers that it is a Texas corporation, with a principal place of business in Texas. *Id*. at ¶ 2. Therefore, neither the parties nor the Court have a basis to confer general jurisdiction upon Defendants. Accordingly, the Court will confine its primary personal jurisdiction analysis to specific jurisdiction.

2. Specific Jurisdiction

Defendants argue that the Court cannot exercise specific personal jurisdiction over any Defendant. Specifically, as regards the Showalters, Defendants maintain that the Bielsteins have

not sustained their burden that: (i) the Showalters purposefully directed their activities toward Pennsylvania; (ii) that the Bielsteins claims arise out of the Showalters' activities in Pennsylvania; or (iii) that the exercise of specific jurisdiction over the Showalters would be reasonable under the circumstances.  Defendants also contend that this Court cannot maintain jurisdiction over Signature Solar, LLC, because that entity did not exist until after the transaction at issue was completed.

As regards specific jurisdiction over any of Defendants, the Bielsteins contend that Defendants made a conscious choice to contract with the Bielsteins and to place the DIY Solar Kit through Pennsylvania's stream of commerce. Specifically, the Bielsteins assert that they became aware of the Defendants' product through a Facebook page[1]; Mr. Bielstein contacted James Showalter prior to purchase; he placed an order for the DIY Solar Kit; Defendants invoiced Mr. Bielstein[2]; Mr. Bielstein wired to pay for the invoice from his Pennsylvania-based bank; and the DIY Solar System was shipped to the Bielsteins's Pennsylvania address.  The Bielsteins also maintain that, unrelated to their purchase, Defendants shipped Signature Solar-marketed products to Pennsylvania residents on twenty-two occasions. As regard the corporate entity, the Bielsteins argue that this Court has specific personal jurisdiction over Signature Solar since the pre-incorporation acts of Signature Solar's promotors and owners, James and John Showalter, were subsequently ratified by Signature Solar.

---

[1] In their Amended Complaint, the Bielsteins attach a Facebook page purporting to be from Signature Solar. (ECF No. 7-1).  Examination of the document indicates it was printed 2/14/2023, which is after the subject transaction and subject fire.  *Id*.  The Bielsteins have not provided any evidence that the Facebook page or the website link contained therein existed in the same form at the time the Bielsteins became aware of the DIY Solar Kit.
[2] The Invoice was only issued to Mr. Bielstein without any reference to his address. (ECF No. 7-2).

In response, Defendants argue that twenty-two transactions in Pennsylvania do not represent a significant volume of sales.  Further, Defendants maintain that there is no dispute that, the manufacture of the Solar Kit, the Bahamian installation of the Solar Kit, post-sale discussions among the parties related to that installation, and the Bahamas fire and property damaged all occurred outside of Pennsylvania.

Defendants further contend that the only contact with Pennsylvania, the initial shipment of the Solar Kit enroute to its ultimate destination in the Bahamas, was incidental at best.

In contrast to general jurisdiction, specific jurisdiction differs:

> [specific personal jurisdiction] covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1024–25, 209 L.Ed.2d 225 (2021) (internal citations omitted).

Here, the Court will first address whether the subject contacts would subject any of the Defendants to specific personal jurisdiction.  Before engaging in a contacts analysis, the Court will briefly address the Bielsteins's "stream of commerce" argument that the sale of the DIY Solar Kit to the Bielstein into the state of Pennsylvania subjects Defendants to specific personal jurisdiction.  Under United States Supreme Court and Third Circuit precedent, the "stream of

6

commerce" theory for specific personal jurisdiction has been rejected. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018). Therefore, the Bielsteins's arguments regarding the same are unavailing. Instead, the Court's analysis must shift to whether any of the asserted contacts can be construed to support that Defendants purposely availed themselves of the privilege of conducting activities in Pennsylvania. These contacts can be categorized as internet and non-internet-based contacts.

    1. Internet-based contacts

The Bielsteins's Amended Complaint avers that they became aware of DIY Solar Kits through a Facebook page. (ECF No. 7 at ¶ 11). While the parties did not brief the significance of the subject Facebook page or of the website address that appears within it, the Court will examine whether this alleged "contact" constituted "purposeful availment" by the Defendants.

In *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit stressed that the propriety of exercising personal jurisdiction based on the operation of an Internet web site depends upon where, on a sliding scale of commercial interactivity, the website falls. *Id*. at 452 (citing *Zippo Mfg Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). Where the defendant is clearly doing business in the forum state through its web site, and where the claim relates to or arises out of use of the web site, personal jurisdiction exists. *Toys "R" Us*, 318 F.3d at 452. But "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 80 (3d Cir. 2015) (quoting *Toys*

*"R" Us*, 318 F.3d at 454). Stated differently, "there must be 'something more' ... to demonstrate that the defendant directed its activity towards the forum state." *Desktop Techs., Inc. v. Colorworks Reprod. & Design*, No. 98-cv-5029, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999).

Here, the Bielsteins have not met their burden to establish that the Defendants specifically directed a Facebook page or other webpage to Pennsylvania or that they knowingly interacted with Pennsylvania residents through these media. The Bielsteins have not demonstrated that a single Pennsylvania resident actually transacted with Defendants through either a Facebook page or webpage. Indeed, the Bielsteins have neither averred nor produced evidence that they conducted any commercial activity through Defendants' Facebook webpage presence. Instead, the Bielsteins have produced an invoice, but that invoice contains no indications that it was sent to a Pennsylvania address. The Bielsteins have also averred that they paid said invoice by wire from their bank. No evidence or allegations indicate that this transaction occurred through Facebook or webpage internet contacts. Therefore, the Bielsteins have not demonstrated how Defendants "purposefully availed" themselves of the privilege of conducting business in Pennsylvania through Facebook internet commerce.

2.  Non-Internet Contacts

With regard to non-internet contacts, the Bielsteins assert that Defendant spoke with Mr. Bielstein via telephone prior to purchasing the subject product; placed an order for the Defendants' product from their Pennsylvania-based home; the Bielsteins received an invoice for the DIY Solar Kit; Mr. Bielstein wired payment from his Pennsylvania-based bank; and the DIY Solar Kit was shipped to the Bielsteins's Pennsylvania address. The Bielsteins also assert twenty-two other Pennsylvania residents received products from Defendants.

The Pennsylvania's long-arm statute allows for personal jurisdiction resulting from a defendant's "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa.C.S. § 5322(a)(4).  However, "the stretch of this statute has not been extended to include the residual effects of an out-of-state accident to a state resident." *Acey v. Schmidt* 2006 WL 1670211, at *3 (W.D.Pa. June 15, 2006) (quoting *Williams v. Moody,* 1999 WL 79535, at *1 (E.D.Pa. Jan.22, 1999)).

Here, following a careful review of the averments and jurisdictional discovery exhibits, the subject non-webpage Facebook internet contacts do not demonstrate that Defendants purposely availed themselves of the privilege of conducting activities within Pennsylvania.  What is clear, from both the face of the Amended Complaint and submitted exhibits, is that Pennsylvania appears insignificant to this litigation.  Ultimately, the fact that the Bielsteins are Pennsylvania residents is "random, isolated, or fortuitous."  The averments and evidence suggest that Pennsylvania served as a mere pass-through point for the subject product before it was allegedly installed, malfunctioned, and caused harm in the Bahamas, all outside the Pennsylvania forum.

With regard to communications occurring between Mr. Bielstein and the Showalters, Mr. Bielstein attested as follows:

> 3. Prior to purchasing the DIY Solar Kit, I had a number of conversations with James Showalter […].
>
> ***
>
> 5. I contacted, and was contacted by, James Showalter via his personal cellular phone and Signature Solar's office phone.
>
> ***
>
> 13. During these discussions with Defendant John Showalter we discussed the fact that I would be installing the DIY Solar Kit in our vacation home in Abaco, Bahamas […].

>    \*\*\*
>
>    5. I began the installation of the DIY Solar Kit on or around March 30, 2021 and finalized its installation on or around April 1, 2021.
>
>    6. While installing the DIY Solar Kit, I had countless conversations with both James Showalter and John Showalter via email, text message, and phone call, through which James and John Showalter assisted me with certain aspects of the DIY Solar Kit installation.

(ECF No. 17-1 at ¶¶ 3,5, and 13; ECF No. 30-9 at ¶¶ 5-6).  The Bielsteins clearly aver and attest that any of Defendants' alleged contacts, vis-à-vis the DIY Solar Kit, were ultimately directed toward the Bielsteins's non-forum Bahamian Vacation Home.  Indeed, the subject matter of the discussions with James and John Showalter all indicated that the final destination of the DIY Solar Kit would be in the Bahamas.  The DIY Solar Kit's could just as easily been shipped directly to the Bahamian Vacation Home. Moreover, the Bielsteins provide no evidence that the subject invoice was purposefully directed to Pennsylvania.  The Bielsteins have also not indicated the manner in which the invoice was sent to them.

Further, the payment from the Bielsteins' Pennsylvania-based bank is of "negligible significance for purposes of determining whether [a defendant] had sufficient contacts in [the forum]."  See *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). Finally, as regard the twenty-two customers from Pennsylvania, the Bielsteins have neither defined the scope of those customer interactions, including the final destination of Defendants' products, nor have they provided any authority as to the significance of any volume of sales upon any specific personal jurisdiction analysis, to move these contacts beyond the realm of "random, isolated, or fortuitous."  While the Court does not have an indication of the total volume of sales by Defendants outside of Pennsylvania,  a low volume, generally, does not meet a "minimum contacts" threshold for specific personal jurisdiction in Pennsylvania, where the harm occurred

10

outside the forum. *See e.g.*, *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F.Supp.2d 268, 272 (M.D. Pa. 2000) (holding that defendant's .04%—.05% of product sales was not sufficient to put the defendant on notice that it might be haled into court in Pennsylvania, where the tort occurred outside the forum). Again, the Bielsteins have not met their burden to provide a sufficient context for twenty-two customers, vis-à-vis overall sales volumes, where the alleged harm occurred in the Bahamas. Therefore, the Bielsteins have not met their burden to plead that Defendants' alleged contacts with Pennsylvania confer specific personal jurisdiction in Pennsylvania.

Accordingly, Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2) will be granted.

III.    12(b)(6) Motion

Having found that this Court cannot maintain personal jurisdiction over any of the Defendants, Defendant, Signature Solar's, Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), is moot.

IV.    Conclusion and Order

Based upon the foregoing, Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), will be granted. And because this Court lacks personal jurisdiction over Defendants, their Motion to Dismiss, pursuant to Fed. Civ. P. 12(b)(6), will be rendered moot.

Before the Court enters a final order disposing of the Motions to Dismiss, the Plaintiffs shall have until February 12, 2024, to file a request that the order disposing of the Motion to Dismiss also provide for and identify a requested transfer to a court of competent jurisdiction. Should no request be filed by said date, the Court will enter an order granting Defendants' motion to dismiss and dismissing this action.

DATED this 5th day of February, 2024.

                              BY THE COURT:

                              _____
                              MARILYN J. HORAN
                              United States District Judge